IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MICHAEL B. WHITE,
    Plaintiff,

vs.                                                  Case No.: 5:12cv389/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
    Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* docs. 8, 10). It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.    PROCEDURAL HISTORY

On June 16, 2010, Plaintiff filed an application for SSI, and he alleged therein disability beginning July 13, 2005 (tr. 10).[1] His application was denied initially and on reconsideration, and thereafter he requested a hearing before an administrative law judge ("ALJ"). A hearing was held

---

[1] All references to "tr." refer to the transcript of Social Security Administration record filed on February 28, 2013 (doc. 12). Moreover, the page numbers refer to those found on the lower right-hand corners of the transcript pages, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

on April 21, 2011, and on May 12, 2011, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 10–20). The Appeals Council subsequently denied Plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

II. FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (*see* tr. 10–20):

(a) Plaintiff did not engage in substantial gainful activity between June 16, 2010, the date he applied for SSI, and May 12, 2011, the date the ALJ issued his decision.[2]

(b) Plaintiff had four severe impairments during the relevant period, namely, lumbar degenerative disc disease ("DDD"), obesity, spinal stenosis, and disc herniation, but he had no impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(c) Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. § 416.967(a),[3] with various restrictions and limitations (as discussed more fully *infra*).

(d) Plaintiff—who was born on November 3, 1981, and thus was well under the age of fifty, a "younger person" (*see* 20 C.F.R. § 416.963(c)), during the relevant period—has a high school education and past relevant work as a delivery route driver, which work he performed at a medium level of exertion.

(e) Plaintiff could not perform his past relevant work as a delivery route driver during the relevant period because the requirements of that job exceeded his RFC, but he was able to perform other jobs that existed in significant numbers in the national economy—including assembler, cuff folder, and charge account clerk—which jobs were performed at the sedentary level of exertion and otherwise accommodated his RFC; thus, he was not disabled.

---

[2] This relatively short time frame—i.e., less than one year, between June 16, 2010 and May 12, 2011—is the time frame relevant to Plaintiff's claim for SSI and will hereafter be referred to as the "relevant period." *See* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which she is both disabled and has an SSI application on file).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

Case No.: 5:12cv389/EMT

III.  STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[4] the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, he is not disabled.

2. If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3. If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent his from doing her past relevant work, he is not disabled.

5. Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV. SUMMARY OF PLAINTIFF'S PERSONAL AND MEDICAL HISTORY

A. Background

As an initial matter, the court notes that its summary of the evidence in this case (and discussion of Plaintiff's claims, *infra*) is relatively limited, for the following reasons. The court's Scheduling Order, issued March 1, 2013 (doc. 14), in relevant part directed Plaintiff to file a memorandum that "specifically addresse[d] the claimed error[s]" and, further, that if Plaintiff failed to do so the failure would be deemed a failure to prosecute and would result in dismissal of this

---

[4] In general, the legal standards applied are the same regardless of whether a claimant seeks disability insurance benefits ("DIB") or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, citations in this Order should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

Case No.: 5:12cv389/EMT

action (*see id.* at 1) (emphasis in original). The scheduling order also directed Plaintiff to set forth his legal contentions and "specifically cite the record by page number for factual contentions" (*id.*). And Plaintiff was warned that "[f]ailure . . . to support factual contentions with accurate, precise citations to the record will result in the contention(s) being disregarded for lack of proper development" (*id.* at 2, emphasis in original). Plaintiff submitted a memorandum that is summarized as follows.

⦁ In the section of the memorandum titled "**STATEMENT OF THE ISSUES**," Plaintiff merely recited the ALJ's RFC determination (doc. 24 at 2). Plaintiff then summarized the testimony that he, and a vocational expert ("VE"), provided at Plaintiff's hearing before the ALJ (*id.* at 3–4).[5]

⦁ Next, in the section of the memorandum titled "**Relevant Medical Evidence**," Plaintiff mentioned and briefly discussed the following evidence of record: (1) the results of an open lumbar magnetic resonance imaging ("MRI"), obtained on September 12, 2005, or nearly five years prior to the beginning of the relevant period (*id.* at 5, referencing tr. 219, 220[6]); (2) a treatment record from Merle P. Springer, M.D., a neurosurgeon, dated October 3, 2005, well before the relevant period (*id.*, referencing tr. 235, 237); (3) a discharge summary from a two-day hospital stay in late December 2006, also before the relevant period (*id.* at 6, referencing tr. 315); (4) reports from Julian A. Salinas, Ph.D., who conducted a consultative psychological evaluation of Plaintiff on October 26, 2006, prior to the relevant period, and a follow-up consultative evaluation on July 26, 2010, during the relevant period (*id.*, referencing 243–44 & tr. 337, respectively); (5) treatment records from Sharon S. Fawaz, D.O., Plaintiff's primary care physician, who treated Plaintiff before and during the relevant period (*id.*, referencing tr. "320–330"); and (6) treatment records from David Norfleet, D.O., who treated Plaintiff through August 2007, prior to the relevant period (*id.*, referencing tr. "247–293").

---

[5] Within his summary of the hearing testimony, Plaintiff appears to assert a claim for relief, namely, that the ALJ erred in posing a hypothetical question to the VE because the question limited the hypothetical person to lifting no more than fifteen pounds, yet Plaintiff's RFC limited him to lifting no more than ten pounds (*see* doc. 24 at 4). Even though Plaintiff failed to specifically assert this claim for relief, or include it the argument or concluding sections of his memorandum (as will be seen *infra*), the undersigned will nevertheless address this claim.

[6] Although Plaintiff states that this MRI was obtained on November 12, 2005 (doc. 24 at 5), the MRI report reflects that it was obtained on September 12, 2005 (*see* tr. 219–20).

Case No.: 5:12cv389/EMT

The next section of Plaintiff's memorandum is titled "**ARGUMENT**," and in this section Plaintiff again recited the ALJ's RFC determination (albeit in the context of describing the ALJ's hypothetical questioning of the VE) (*see* doc. 24 at 7). Next, Plaintiff repeated the results of the September 2005 lumbar MRI (*id.*). Plaintiff, <u>who is represented by counsel in this appeal</u>, then argued as follows (and precisely as follows, with no alterations, additions, omissions, or corrections):

> It is clear from Section 404.1567 of the CFR an individual must be capable of performing the majority of the requirement of sedentary work to be found not disabled. In this claim Mr. White was found to be capable of sitting for 20-30 minutes before having to stand and relieve any discomfort yet he was able to stand for no more than 10 to 15 minutes and could walk no more than 30 to 40 yards. Even in the hypothetical question the ALJ acknowledged that Mr. White suffered from discomfort, but does not discuss how bad this pain may be at times other than to say that he can stand for no more than 10 to 15 minutes and could walk no more than 30 to 40 yards.
>
> This does not clarify the issue as to whether this 10 to 15 minutes and walking more than 30 to 40 yards. Recall that the DOT would most likely require if someone was only able to sit for 20-30 at a time the ALJ did not say more than 10 to 15 minutes at a time or walk 30 to 40 yards per occasion (Tr. 15). His findings are not clear as to what Mr. White is capable of doing in 8 hours. Not at one moment in time.
>
> This RFC listed is almost impossible for Mr. White or his counsel to determine what the ALJ's true meaning. How far would he walk in a day, how long could he stand in a day. Was his neuropathy considered? Was his mild depression or occasional cellulitis considered? Even if the VE responded that he was capable of work, even she did not know how long he was capable of these activities in total. Finally, even the ALJ acknowledges that Mr. White suffers from back pain, but while Mr. White is justified in stating that his pain between injections is up to a 7/10, the ALJ discounts this and finds it consistently less (Tr. 16-17).

(doc. 24 at 8).

And Plaintiff concluded his memorandum as follows (again, without alteration):

### CONCLUSION

> In sum, Mr. White requests this Court to remand this claim for many reasons but primarily to allow for the proper determination of what his RFC would be. His is morbidly obese and has been so for years, has sever degenerative disc disease, and now is developing anxiety, depression, neuropathy, cellulitis and could very well not survive without proper medical care which he will not receive without help.

Case No.: 5:12cv389/EMT

(doc. 24 at 9).

In light of the court's clear directives in the Scheduling Order, the court will initially focus its outline of Plaintiff's medical history on the eight (8) pages Plaintiff specifically cited: tr. 219, 220, 235, 237, 243, 244, 315, and 337. Although Plaintiff additionally cited Dr. Norfleet's treatment records, he did so by referring the court to all of his treatment records "in bulk" (i.e., nearly fifty pages, identified by Plaintiff as "Tr. 247–293"), instead of identifying a specific page within those records (*see* doc. 24 at 6). Because Plaintiff failed to "specifically cite the record by page number for [his] factual contentions" as to Dr. Norfleet, those contentions will—as the court forewarned—be disregarded for lack of proper development (*see* doc. 14).[7] Although the court could likewise disregard Plaintiff's factual contentions as to Dr. Fawaz, since Plaintiff also referred to her records only in bulk (i.e., "Tr. 320–333"), the court declines to do so. The ALJ relied in part on Dr. Fawaz's records in making his findings, and thus the court must consider her records in determining whether the ALJ's findings are substantially supported by the record. Additionally, Plaintiff vaguely asserted that the ALJ erred in relying on her opinions (*see* doc. 24 at 6), although the records cited by Plaintiff in support of this argument (i.e., tr. 320–33) are not the records on which the ALJ relied; nor are they the records on which the court will focus its attention, as only one page of the records cited by Plaintiff is from the relevant period (i.e., tr. 320, a treatment record dated June 26, 2010). Dr. Fawaz's other records, including those containing the opinions on which the ALJ relied (*see* tr. 17), are found at transcript pages 339–63 and 375–84, are from the relevant period, and thus are more pertinent to the court's review and will be considered.

     B.     Plaintiff's Personal and Medical History

<u>Personal History</u>

Plaintiff completed the twelfth grade and earned a high school diploma (tr. 38). He testified at his hearing held April 21, 2011, that he cannot work due to constant pain in his lower back, the

---

[7] Irrespective of the court's decision to disregard Plaintiff's factual contentions as to Dr. Norfleet, the contentions have no bearing on the issues raised in this appeal (to the extent Plaintiff's memorandum makes it possible for the court to discern them). Plaintiff referenced Dr. Norfleet's records to establish that he treated Plaintiff in connection with his claim for workers' compensation benefits between December 2005 and February 2007, and that as part of that treatment he administered lumbar epidural steroid injections to Plaintiff (*see* doc. 24 at 6). The treatment and injections, however, concluded more than three years prior to the beginning the relevant period.

intensity of which he rated as approximately a six or seven on a ten-point scale (tr. 39–40). He estimated he can stand for up to about fifteen minutes, sit for twenty to thirty minutes, and walk thirty to forty yards; he also noted he has difficulty lifting objects such as a gallon of milk, because doing so causes back pain, and that it hurts to bend or stoop (tr. 41, 47–49). Plaintiff testified that at the time of his hearing he weighed 436 pounds, had difficulty walking, and occasionally had numbness in his legs (tr. 42, 44). Plaintiff further testified that he was depressed but acknowledged he did not receive care from a specialist and instead was treated by his primary care physician (tr. 44–45). With regard to social activities, Plaintiff noted that he goes out to a bar about once every two weeks and stays at the bar for three to four hours, fishes "once a week, one – two or three times a month, maybe" for two to three hours, and/or lies in bed or watches television during the day (tr. 50–52). Additionally, Plaintiff's mother reported (in July 2010) that Plaintiff was able to drive, fold laundry, prepare simple meals, grocery shop, visit with friends, and rise, shower, and dress without assistance (tr. 174; *see also* tr. 203, similar reports made by Plaintiff in October 2010). His mother also stated that Plaintiff could walk to the mailbox and back without stopping, and that the total distance to do so was approximately 200 feet (or, approximately, sixty-six yards) (tr. 174).

Finally, Plaintiff testified that he worked as a newspaper deliverer for about one year during 2008 and 2009 (*see* tr. 35–36).[8] In this job Plaintiff frequently lifted and carried bundles of newspapers that weighed approximately twenty to twenty-five pounds, and he sat for about three and a half hours a day (*see* tr. 189). He also handled, grabbed, or grasped "big objects" and walked, stood, and crouched for approximately fifteen minutes (per activity) (*id.*). On a disability report, dated July 6, 2010, Plaintiff reported that he stopped working at this job because "[s]omeone took the route that [he] had" (tr. 164).

<u>Medical History</u>

In mid-July 2005, Plaintiff reportedly injured his back at work while "lifting and twisting," which resulted in an immediate onset of back pain, which persisted, and which—after about four weeks—radiated into his right leg (*see* tr. 236). Plaintiff was referred for an open lumbar MRI, and

---

[8] The record reflects that Plaintiff previously applied for DIB, but his application was denied, at least in part, apparently because the work he performed in 2008 and 2009 was considered substantial gainful employment (*see* tr. 63; *see also* tr. 28–29).

Case No.: 5:12cv389/EMT

he obtained the MRI on September 12, 2005 (tr. 220). The MRI revealed moderate diffuse disc degeneration throughout the lumbar spine with disc desiccation and disc space narrowing and congenitally short pedicles, as well as circumferential spondylitic bulges and moderate to severe central canal stenosis at L1-2, L2-3, L3-4, and L4-5 (*id.*).[9]

On October 3, 2005, Plaintiff presented to Dr. Stringer for a neurosurgical evaluation (tr. 236). Dr. Stringer reviewed the recent lumbar MRI (tr. 237). He then examined Plaintiff, which examination included—among other segments—a sensory examination, deep tendon reflex testing, Babinski testing, straight leg raise testing, and strength and motor-skill testing of the extremities (*see* tr. 235–37), after which Dr. Stringer concluded that "there is no evidence of lumbar nerve root compression or cauda equina compression" (tr. 235).[10] Dr. Stringer also concluded that no treatment was available from a neurological standpoint, and he advised Plaintiff that should he develop signs or symptoms of nerve root compression in the future he could return for a reevaluation, at which time he might require surgery (*id.*). Finally, Dr. Stringer opined that Plaintiff was likely able to perform light duty work, with no lifting more than twenty pounds, although he stated he would defer to Plaintiff's treating physician in this regard (*id.*).

In October 2006 Plaintiff presented to Dr. Salinas for a consultative psychological evaluation, presumably in connection with his earlier claim for DIB (*see* tr. 241; *see also* footnote 8, *supra*). Plaintiff told Dr. Salinas he was depressed due to a recent breakup with his girlfriend, financial difficulties, and a perceived lack of self-worth (tr. 244). He also stated he had never received mental health counseling but was, at the time of the evaluation, being prescribed antidepressant and anti-anxiety medications from his primary care physician (*see* tr. 242). Dr. Salinas commented that Plaintiff was cooperative, affable, and able to interact effectively (tr.

---

[9] The record reflects that Plaintiff weighed approximately 400 pounds at the time of the lumbar MRI (tr. 225).

[10] Plaintiff argues that in finding no evidence of nerve root compression, Dr. Springer "must have overlooked the numerous complaints and findings on the open MRI" (doc. 24 at 5). Plaintiff's argument is belied by Dr. Stringer's treatment record, which specifically indicates that he reviewed the MRI (tr. 237). To be sure, Dr. Stringer's summary of the MRI results mirrors that contained on the MRI report (*compare* tr. 237 *with* tr. 220). His treatment record also reflects that he interviewed Plaintiff before examining him, and he included in his record Plaintiff's subjective complaints of pain and other symptoms (tr. 236).

Case No.: 5:12cv389/EMT

242–43).[11] He also noted that Plaintiff's mental status was intact and that the results of his psychological evaluation were largely unremarkable (tr. 243–44). Dr. Salinas assessed adjustment disorder with depressed mood, opined that Plaintiff was not precluded from work from a psychological standpoint, and opined that working would actually benefit Plaintiff by providing "structure and purpose, and [would] likely result in improved emotional functioning" (*id.*). Plaintiff returned to Dr. Salinas for another consultative examination, this time apparently in connection with his instant claim for SSI (*see* tr. 334). Dr. Salinas' report regarding this evaluation is quite similar to his earlier report, with a few exceptions. At this visit, Plaintiff reported he had a girlfriend, and he suggested that his ability to perform household chores was somewhat more limited than before (*see* tr. 335). Additionally, Plaintiff told Dr. Salinas he was smoking marijuana on a daily basis (*id.*). Thus, in addition to assessing dysthymic disorder at this visit, Dr. Salinas additionally assessed cannabis abuse (tr. 337). He further noted that Plaintiff's subjective complaints were consistent with mild, chronic depression, but he opined that Plaintiff's emotional difficulties were not the primary source of any deficits in daily functioning he might have (*see id.*).

Plaintiff was hospitalized from December 22 through December 24, 2006, during which he was treated for an abscess and cellulitis of the trunk and neck (tr. 315).

Dr. Fawaz, Plaintiff's primary care physician, treated him from approximately late-August 2009 through mid-March 2011, for a variety of complaints including back pain and tenderness, obesity, hypertension, a sprained ankle, anxiety, and depression (*see generally* tr. 320–33, 354–65, 375–84). Dr. Fawaz's notes provide few clinical observations, but at each visit she did note that Plaintiff showed no signs of distress (*see id.*). Her only course of treatment was to prescribe various narcotics for Plaintiff's complaints of pain and depression/anxiety (*id.*). As of Plaintiff's last visit with Dr. Fawaz, on March 18, 2011, Plaintiff was only taking 10mg of Lortab and .5mg of Alprazolam (*see* tr. 383).

On July 27, 2010, Dr. Fawaz completed a form on which she first listed Plaintiff's diagnoses—low back pain, sacrum instability, and spinal DDD—and then she assessed Plaintiff's physical abilities (*see* tr. 338–39). She opined that Plaintiff had decreased flexion in his lumbar

---

[11] As an aside, Dr. Salinas noted that Plaintiff was able "to sit for a prolonged period" (tr. 243).

Case No.: 5:12cv389/EMT

spine, in part due to an obese abdomen, and chronic pain, as well as slightly decreased grip strength and lower extremity strength (i.e., at "4/5"), but no joint deformity, radiculopathy, gait disturbance, or soft tissue injury (tr. 339). She also noted that Plaintiff could ambulate without an assistive device (*id.*).

    C.    Other Information Within Plaintiff's Claim File

Linda Williams, a vocational expert ("VE"), testified at Plaintiff's hearing. In summary, she testified that Plaintiff performed his past relevant work as a delivery route driver at a medium level of exertion (tr. 54). The ALJ then asked her to consider a hypothetical individual of Plaintiff's age, who has the same educational background and work history as Plaintiff, and is able to:

> perform a range of light work as follows: can lift, carry, push, pull no more than 10 pounds frequently, but no more than 15 pounds occasionally. The person cannot climb ladders, ropes, or scaffolds, can occasionally climb ramps and stairs. The person is limited to occasional balancing, stooping, kneeling, crouching, and crawling. The person should avoid concentrated exposure to [certain environmental conditions or hazards]. The person has no manipulative limitations, . . . bilaterally. The person is able to sit 20 to 30 minutes before having to stand up and relieve any discomfort. The person can stand no more than 15 - - 10 to 15 minutes, and walk no more than 30 to 40 yards.

(tr. 55). Next, the ALJ asked the VE whether such a hypothetical person could perform Plaintiff's past relevant work, and the VE stated the person could not (*id.*). VE Williams explained that the hypothetical question described a "light RFC," but Plaintiff's past work was performed at the medium level of exertion (*id.*). The ALJ then asked whether a hypothetical person with the same RFC profile could perform any other available positions (tr. 56). In response, VE Williams stated that she would limit her answer to jobs that are performed at the sedentary level of exertion, noting that the ALJ's limiting the hypothetical person to standing no more than fifteen minutes rendered the RFC one for sedentary work (*see id.*). She then opined that the hypothetical person could perform various sedentary jobs, including assembler, cuff folder, and charge account clerk (*id.*). Finally, the ALJ asked the VE to consider the same hypothetical individual, but in addition to specifically limit that person to sedentary work <u>and</u> restrict the person from lifting more than ten pounds (*id.*). The ALJ then asked the VE whether the hypothetical person could perform the same three sedentary jobs she previously identified, and the VE responded that the person could (*id.*).

Plaintiff's counsel was then given an opportunity to question VE Williams, and he did so. Although his questions were a bit disjointed and difficult for the VE to follow, the gist of the testimony he elicited from her is this: if the hypothetical person had to take more than the standard number of breaks permitted in a workday, or breaks that lasted longer that the standard time permitted for breaks in an average workplace, the person would likely be precluded from all employment (*see* tr. 56–60).

V. DISCUSSION

As can be seen *supra*, the precise nature of Plaintiff's claims is far from clear. As best the court can discern, Plaintiff appears to assert error with regard to the ALJ's RFC determination, hypothetical questioning of the VE, and consideration of Dr. Fawaz's opinions. Thus, these are the claims the court will specifically consider and dicuss. To the extent Plaintiff has asserted additional claims, he failed to "specifically address[] the claimed error" as directed by this court, and thus—as Plaintiff was forewarned—any additional claims are waived (*see* doc. 14).

A. RFC Determination

Residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments. *See* Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). As stated in 20 C.F.R. § 416.945(a), it is the most a claimant can still do despite his limitations. "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Although the RFC determination is a medical question, it is not based only on "medical" evidence, that is, evidence from medical reports or sources; rather, an ALJ has the duty, at step four, to assess RFC on the basis of all the relevant, credible evidence of record. *See* Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations); Dykes v. Apfel, 223 F.3d 865, 866–67 (8th Cir. 2000) (per curiam) (RFC is a determination based upon all the record evidence, but the record must include some medical evidence that supports the RFC finding). *See also* 20 C.F.R. § 416.945.

Here, the ALJ carefully considered the entire record, and thereafter limited Plaintiff to sedentary work, as defined in the regulations (*see* footnote 3, *supra*), with the following limitations: (1) Plaintiff can lift, carry, push, or pull up to ten pounds; (2) Plaintiff cannot climb ladders, ropes, or scaffolds but can occasionally climb stairs and ramps; (3) Plaintiff can occasionally balance, stoop, kneel, crouch, and crawl; (4) Plaintiff must avoid concentrated exposure to environments of extreme cold and heat and avoid moderate exposure to hazards such as machinery and heights; (5) Plaintiff has no manipulative limitations and thus retains the ability to reach, handle, finger, and feel, bilaterally; (6) Plaintiff can sit for twenty to thirty minutes, after which he must stand and relieve any discomfort; (7) Plaintiff can stand no more than ten to fifteen minutes; and (8) Plaintiff can walk no more than thirty to forty yards.

The ALJ did not err, as his RFC determination is firmly supported by substantial evidence in the record as a whole. The only objective diagnostic evidence in the record—the lumbar MRI—shows no evidence of lumbar nerve root compression or neurogenic claudication (*see* tr. 235). Likewise, the examination by Dr. Springer, a specialist, coupled with his review of the MRI, led Dr. Springer to conclude that Plaintiff had no nerve root compression and was likely able to perform work at the light level of exertion, including lifting up to twenty pounds. What is more, the MRI record, Dr. Springer's treatment records, and the other records cited by Plaintiff in support of the arguments in his memorandum (with the exception of one treatment record from Dr. Fawaz) pre-date Plaintiff's job as a newspaper deliverer, a job he performed in 2008 and 2009, and which job, by Plaintiff's own reports, required <u>significantly</u> greater physical capacities than those set forth in the RFC. Thus, the treatment records cited by Plaintiff cannot in any way support a claim that Plaintiff was incapable of performing sedentary work during the relevant period (June 16, 2010, through May 12, 2011), much less incapable of performing sedentary work with a host of restrictions and accommodations like those set forth in the RFC. Additionally, the only physician who treated Plaintiff during the relevant period, Dr. Fawaz, did not restrict Plaintiff from work, impose any work-related restrictions, or offer any opinions that conflict with or otherwise undermine the ALJ's findings. Dr. Fawaz also specifically noted that Plaintiff had no joint deformity, radiculopathy, or gait disturbance, and that he did not need an assistive device to ambulate.

Additionally, and perhaps of greatest import, Plaintiff's testimony regarding his physical abilities is wholly consistent with the ALJ's RFC determination. As previously noted, Plaintiff testified that he could stand up to fifteen minutes, sit twenty to thirty minutes, and walk thirty to forty yards, and the ALJ included these exact limitations in the RFC. The ALJ also included in the RFC a sit/stand option so that Plaintiff could relieve any back pain he might experience with prolonged sitting or standing. Thus, giving Plaintiff every benefit of the doubt, the ALJ essentially adopted Plaintiff's testimony.

Finally, the evidence as to Plaintiff's daily activities further supports the ALJ's RFC determination. For example, Plaintiff reported that he showered and dressed himself without assistance, made simple meals, did light housework, fished, shopped for groceries, visited with friends, went to bars, and attended to appointments and errands on his own (tr. 50–51). Likewise, Plaintiff's mother reported that he was able to perform similar activities and walk nearly seventy yards (tr. 174). These are hardly the activities of an individual with disabling limitations. Instead, Plaintiff's ability to perform these activities indicates that he can perform work at a sedentary level of exertion, with the additional restrictions and limitations set forth in the RFC.

In sum, the ALJ's RFC determination is based on the relevant evidence of record, and it is substantially supported by that evidence. Thus, Plaintiff is not entitled to relief on this claim.

B.     ALJ's Hypothetical Questioning of the VE

A hypothetical question must comprehensively describe a claimant's condition, and vocational expert testimony that does not accurately address that condition cannot be considered substantial record evidence. <u>Pendley v. Heckler</u>, 767 F.2d 1561, 1563 (11th Cir. 1985). Here, Plaintiff contends the ALJ erred because his question to the VE limited the hypothetical individual to lifting no more than fifteen pounds, yet Plaintiff's RFC limited him to lifting no more than ten pounds. Plaintiff's contention is without merit. Although the ALJ <u>initially</u> asked the VE to consider an individual that could lift fifteen pounds occasionally, the ALJ subsequently modified the question and limited the hypothetical individual to lifting no more than ten pounds. In response to the modified question (which otherwise fully corresponded with Plaintiff's RFC), VE Williams testified that the hypothetical person could perform at least three available sedentary jobs. Thus, because the

ALJ's modified question comprehensively described Plaintiff's condition, the ALJ did not err in relying on the VE's testimony to find Plaintiff "not disabled."

    C.    ALJ's Consideration of the Opinions of Dr. Fawaz

Plaintiff contends the ALJ erred in assigning significant weight to Dr. Fawaz's opinions, and in support he states, without alteration, as follows:

> As opposed to specialists that were familiar with the stenosis and degeneration occurring in Mr. White's back the ALJ chose to put 'significant weight' on a family practitioner named Dr. Fawaz, but never even mentions the neuropathy that was documented. This makes little since since Dr. Fawaz noted tenderness in the joints, neuropathy on 6/26/10; tenderness and sacrum instability on 5/26/10, tenderness and anxiety on 4/28/10; In fact there was tenderness on every visit and some included depression, and anxiety.

(doc. 24 at 6) (references to transcript omitted).

Initially, although Plaintiff claims the ALJ should have assigned significant weight to the opinions of "specialists," over those of Dr. Fawaz, Plaintiff has not identified the specialists or the opinions to which he refers. As previously noted, the only specialist whose records are referenced by Plaintiff in his memorandum is Dr. Springer, a neurosurgeon. Had the ALJ done as Plaintiff urges here, and adopted Dr. Springer's opinions, the ALJ would have found Plaintiff capable of performing light work and lifting up to twenty pounds. Thus, there is no error. What is more, Dr. Fawaz is the only physician who treated Plaintiff during the relevant period. Thus, the opinions of other physicians or specialists would not be pertinent to Plaintiff's condition during the relevant period. Additionally, Plaintiff is simply wrong in claiming that "the ALJ never even mention[ed] the neuropathy" documented by Dr. Fawaz and failed to consider that Dr. Fawaz noted tenderness. The ALJ specifically stated that Dr. Fawaz treated Plaintiff for "disc disease, joint disease, hypertension, spondylosis, morbid obesity, [] autonomic nervous system dysfunction with reported symptoms of back pain, <u>neuropath</u>y, and muscle <u>tenderness</u>" (tr. 17) (emphasis added). Likewise, in finding Plaintiff's mental impairments non-severe, the ALJ noted that Dr. Fawaz, a family physician, treated Plaintiff for complaints of anxiety and depression and prescribed medications therefor (tr. 13). The ALJ simply did not err in summarizing Dr. Fawaz's treatment records or in considering her opinions as to Plaintiff's physical abilities during the relevant period.

VI.    CONCLUSION

The decision of the Commissioner could be affirmed simply due to Plaintiff's failure to file a memorandum that specifically addressed the claimed errors and specifically cited the record by page number for factual contentions (*see* doc. 14). Alternatively, the decision below should be, and is, affirmed, because the Commissioner's final decision is supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at 1560.

The undersigned carefully considered the claims apparently asserted by Plaintiff, as well as the overall findings and conclusions of the ALJ, and finds no error.[12] The only "errors" that are apparent here are those committed by Plaintiff's counsel, whose representation and advocacy on behalf of his client—putting it kindly—have fallen far short of what is expected of—indeed should be demanded from—a lawyer, professional, and officer of this court.

Accordingly, it is **ORDERED** that the decision of the Commissioner is **AFFIRMED**, that this action is **DISMISSED,** and that the clerk is directed to close the file.

At Pensacola, Florida this 7<u>th</u> day of February 2014.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[12] Plaintiff's counsel conceded at the hearing that none of Plaintiff's impairments meet or equal a listed impairment (*see* tr. 34). Nevertheless, the undersigned reviewed the ALJ's findings at each step of the sequential evaluation.